### HARRIS v. TAYLOR et al., receivers.

1. The failure of the clerk to attach his signature to the copy process, regular in other respects, served upon the defendant in an equitable suit, is not cause for abatement of the suit, the original process attached to the original petition of file in the office of the clerk being regular in all respects, and the copy petition served upon the defendant, as required by statute, along with the defective process, being a true copy of the original petition, including entry of filing thereon under the signature of the clerk.

2. Under the ruling in Lamar v. Taylor, 141 Ga. 227 (3), 234 (80 S. E. 1085), the individual liability of stockholders of the Exchange Bank of Macon, under its charter, to depositors for all moneys deposited by them therein, is, upon its insolvency, an asset of the bank and enforceable in a suit or suits brought by its receivers. Civil Code, § 2249.

3. Section 2249 of the Civil Code (Acts 1894, p. 76), which makes the statutory individual liability of a stockholder in an insolvent corporation an asset of such corporation, "to be enforced by the assignee, receiver, or other officer having the legal right to collect, marshal, and distribute the assets of such failed corporation," is not unconstitutional because, as applied to the Exchange Bank of Macon, chartered before the passage of the act of 1894, supra, it is retroactive and impairs the obligation of contracts. The act is purely remedial, and by it the statutory liability of the stockholder is neither extended nor restricted, increased nor diminished. Moore v. Ripley, 106 Ga. 556 (2), 559 (32 S. E. 647); Lamar v. Taylor, supra.

4. Where a banking corporation has been shown to be insolvent and its assets placed in the hands of receivers, and in pursuance of an order of court the receivers undertake to enforce by suit in equity the individual liability of the stockholders as fixed by the charter in favor of depositors in such corporation, all the stockholders so liable may be joined in one action. There is no misjoinder of causes of action or of parties defendant. Moore v. Ripley, supra.

5. In a suit of the character just indicated, (a) no demand by depositors as a condition precedent to suit is necessary; (b) the liability of the stockholder need not be actually fixed and determined; (c) the assets, legal and equitable, of the corporation, need not have been first completely exhausted; and (d) the action to enforce the statutory liability

of the stockholder may be brought at any time within twenty years after the right of action accrues. Civil Code, § 4360; *Wheatley* v. *Glover*, 125 *Ga.* 710 (19), 728 (54 S. E. 626).

6. In such action the receiver may sue the stockholder in whose name the capital stock stands upon the books of the corporation at the time of its failure (Civil Code, § 2248); or he may sue the real owner of the shares of the capital stock in such failed corporation, although such shares stand on the books of the bank in the name of another who in fact has no interest therein.

7. The amendment to the petition did not set forth a new cause of action.

No. 938. JANUARY 15, 1919.

Equitable petition. Before Judge Mathews. Bibb superior court. February 13, 1918.

On July 8, 1907, upon the petition of a majority of its directors, the Exchange Bank of Macon was placed in the hands of receivers. The petition was against the bank, the stockholders thereof, and certain creditors. As to the creditors the prayers were for injunctive relief only. As to the bank and its stockholders the prayers were for the general equitable winding up of the affairs of the bank, the distributing of its assets, etc. The Exchange Bank was chartered by a special act of the legislature. Its charter provided, "that said corporation shall be responsible to its creditors to the extent of its capital and its assets, and each stockholder shall be individually liable for all the debts of said corporation to the extent of his or her unpaid shares of stock, and said stockholders shall be further and additionally individually liable, equally and ratably, and not one for another, as sureties, to depositors of said corporation for all moneys deposited therein, in an amount equal to the face value of their respective shares of stock; it being the true intent and purpose of this section of this act, that, as to depositors, for all moneys deposited with said corporation, there shall be an individual liability upon such stockholder in such corporation over and beyond the par value of his or her original shares of stock, equal in amount to the face value of said shares of stock; provided that said liability of the stockholders shall not prevent depositors from having equal rank with all other creditors upon the capital property and assets of said bank." (Acts 1890-91, vol. 2, p. 130.) The receivers claimed the right to enforce the statutory liability of the stockholders under the charter for the benefit of the depositors. On June 29, 1912, the receivers were, by order of the court, authorized and directed to prosecute this suit to

enforce such statutory liability of the stockholders and to collect from the stockholders an amount sufficient to pay the depositors for all moneys deposited in said bank, "not heretofore paid out of the other assets of said bank." The petition alleged that the undistributed assets amounted to $21,498.58; the unpaid deposits, according to the books of the bank, amounted to $146,832.60, besides interest. A list of the stockholders and of the number of shares owned by each was set out; and the petition prayed, among other things, for judgment and decree against the "said stockholders of said bank whose names have been set forth herein as defendants in this case, and against such other stockholders as may hereafter, by proper order of the court, be made parties defendant hereto, according to their several liabilities under the terms of the charter of said bank for such amounts as may be ascertained, upon the final accounting herein, to be necessary to pay the depositors of said bank as set forth herein in full." Among the stockholders named as defendants were E. G. Harris, plaintiff in error, who was alleged to be the owner of eleven shares, and W. G. Solomon, trading as W. G. Solomon & Company, who was alleged to be the owner of 106 shares. The petition was filed in Bibb superior court on August 26, 1912, and made returnable to the November term, 1912, of said court. Certain of the stockholders were duly served, and filed pleas to the suit; among other defenses, they prayed that the suit against them be enjoined for the reasons set out in the report of the case of *Lamar* v. *Taylor*, 141 *Ga.* 227 (80 S. E. 1085). Certain of the defendant stockholders were not served fifteen days before the return term. Among these was the plaintiff in error. Such stockholders moved that the suit, for the reasons stated, be dismissed as to them. The court denied this prayer, and allowed the plaintiffs to amend the process by making it returnable to the February term, 1913, of the court. This ruling was affirmed by the Supreme Court in the case of *Turpin* v. *Taylor*, 143 *Ga.* 224 (84 S. E. 547), but with the direction that the court provide for service anew of the suit with the amended process attached. Accordingly the plaintiffs, on January 11, 1916, filed and had allowed an amendment to the original suit, requiring service anew on said defendant stockholders. In this amendment it was set out that Harris had settled his liability on the eleven shares of stock standing in his name; but that 100 of the 106

shares, alleged in the original petition to be owned by W. G. Solomon trading as W. G. Solomon & Company, and standing on the books of the bank in the name of Solomon & Company, were in fact owned by Harris, and that Solomon merely purchased said shares for E. G. Harris, the actual owner thereof. It was also alleged that six of said shares standing in the name of Solomon & Company were in fact the property of another named person; and the amendment asked for the right to strike Solomon as a defendant, and to make Harris and the other alleged stockholder parties defendant; and prayed judgment against each of them. Harris was served, as directed by order of the court, with copy of the original petition and all amendments allowed, including the amendment of January 11, 1916; but the copy of the amended process attached, regular in all other respects, was not signed by the clerk or other officer of the court. Harris traversed the return of service made by the sheriff, and filed a plea in abatement to the suit as to him, upon the grounds stated. He also demurred to the petition as amended, upon the grounds, that no cause of action is set out; there is a misjoinder of causes of action and parties defendant; the receivers are not proper parties to bring the suit; the statute under which the suit is brought (Civil Code, § 2249) is unconstitutional; particularly, the receivers are not authorized to sue thereunder, the bank having been chartered prior to that act; the petition fails to allege a demand by depositors; the stockholder's liability is not fixed and determined; the cause of action is barred by the statute of limitations; as to the 100 shares of stock standing in the name of Solomon, trading in the name of W. G. Solomon & Company, only Solomon is liable to the plaintiffs; as to the 100 shares of stock, the amendment to the petition set up a new cause of action, and Harris, having settled his liability on the eleven shares originally alleged to stand in his name on the books of the bank, is entitled to be discharged. The court overruled the demurrer, and upon motion struck the traverse to the return of service and the plea in abatement. Harris excepted.

*Harris, Harris & Witman,* for plaintiff in error.

*Miller & Jones* and *Hardeman, Jones, Park & Johnston,* contra.

George, J. (After stating the foregoing facts.)

1. It is conceded that the copy process served upon the plaintiff in error was not signed by the clerk. The motion, in the nature

of a general demurrer, to strike the plea in abatement, admits this. The original process was in all respects regular, and was signed by the clerk. True and correct copies of the original petition and the amendment of January 11, 1916, to which was attached a copy of the judge's order allowing the amendment, making Harris a party defendant to the suit, and requiring the clerk to issue process directed to him, "returnable to the next term of this court" (February term, 1916), and providing for service upon him of the petition and process as amended, were served upon the plaintiff in error, along with the unsigned copy process. Both the petition and the amendment, according to the copy entries of the clerk appearing upon the copy petition and copy amendment served upon plaintiff in error, were regularly filed in the office of the clerk of court. The plaintiff in error appeared at the court and at the term thereafter at which he was required by the original process to appear and plead. He was, therefore, not actually misled. The amended petition was addressed to the court; it set out in detail the demand or cause of action, named the plaintiff and the defendant, and prayed for process and judgment against the latter. Under these circumstances, was the plea in abatement properly stricken? The question appears not to have been directly passed on by this court. In *Cochran* v. *Davis,* 20 *Ga.* 581, the question was directly made, and the decision in that case apparently rules that defects in the copy are immaterial if the original is correct. However, the decision was controlled by the failure of the defendant in that case to except in time to an order of the court allowing the copy process to be amended by affixing the signature of the clerk thereto. In *Ga. So. & Fla. Ry. Co.* v. *Pritchard,* 123 *Ga.* 320, 323 (51 S. E. 424), the statement in the opinion of Lumpkin, J., in *Cochran* v. *Davis,* supra, was declared to be obiter. In *Myers* v. *Griner,* 120 *Ga.* 723 (48 S. E. 113), the original process, which had not been signed by the clerk, was allowed to be amended nunc pro tunc by adding the clerk's signature. It was there said, obiter, that if the copy served upon the defendant had not been signed by the clerk or his deputy, or if neither the copy nor the original had been signed by the clerk, a different question would have been presented to the court. Section 5551 of the Civil Code requires the clerk to indorse the date of filing in office upon every petition. Section 5552 is as follows: "To every petition the clerk shall annex

a process (unless the same be waived), signed by the clerk or his deputy, and bearing test in the name of a judge of the court, and directed to the sheriff or his deputy, requiring the appearance of the defendant at the return term of the court." Section 5563 requires the clerk to deliver the original petition, with process annexed, together with a copy of the petition and process for each defendant, to the sheriff or his deputy, who shall serve "such copy" upon each defendant residing in the county. Under section 5572, "No technical or formal objections shall invalidate any petition or process; but if the same substantially conforms to the requisitions of this Code, and the defendant has had notice of the pendency of the cause, all other objections shall be disregarded." Our code is liberal in the allowance of amendments, both as to pleadings and process; and section 5709 provides that "The mistake or misprision of a clerk or other ministerial officer shall in no case work to the injury of a party, where by amendment justice may be promoted." Cases from outside jurisdictions on the point presented are few in number. Owing to the variety of statutes and rules of procedure, such cases are of little service beyond the jurisdiction where they were decided. However, it has been held that the omission in a copy of a copy of the court clerk's signature to the original writ is not material. Clutterbuck *v.* Wildman, 2 Tyrw. (Eng.) 276; Lyon *v.* Baldwin, 194 Mich. 118 (160 N. W. 428, L. R. A. 1917C, 148). In Lyon *v.* Baldwin, supra, it was held: "A service of a writ of garnishment is not void because the copy delivered to the garnishee is not dated and does not contain the signature of the clerk." The omission from the copy delivered of a copy of the judge's signature does not render the service insufficient. Greenleaf *v.* Mumford, 30 How. Pr. (N. Y.) 30 (warrant of attachment). In Collins *v.* Merriam, 31 Vt. 622, the defendant was sued in a justice's court. He moved to set aside the judgment rendered against him, upon the ground that the copy writ served upon him was not signed by a justice or other officer. The decision was against him, and, while other reasons may have required the decision, it was said, in the course of the opinion in the case: "Suppose there was an omission to annex the name of the magistrate who signed the writ to the copy. I apprehend this would not defeat the effect of the service as a notice, and under our decisions would not constitute matter of abatement." However, the

contrary view of the question was taken by the New Jersey Supreme Court in Steedle *v.* Woolston, 88 N. J. L. 9 (95 Atl. 737). It is to be noted that the New Jersey case arose in a "small cause court," and the statute, so far as appears from the decision, did not require a copy of the petition or declaration to be served upon the defendant along with the writ. It has been noticed that our statute requires service on the defendant of a copy of the petition or declaration. This copy should in reason be considered as a "part of the notice" to him. We are disposed to agree with the line of decisions to the effect that the copy petition served upon the defendant may aid the defective process served with it. First National Bank *v.* Rusk, 64 Or. 35, 44 L. R. A. (N. S.) 138, 127 Pac. 780, 129 Pac. 121); Harvey *v.* Chicago & N. W. R. Co., 148 Wis. 391 (134 N. W. 839); Lee *v.* Clark, 53 Minn. 315 (55 N. W. 127); Messervey *v.* Beckwith, 41 Ill. 452. See also *Williams* v. *Buchanan,* 75 *Ga.* 789. The defect in the copy process did not wholly defeat the effect of the service as a notice; and the plea in abatement was properly dismissed.

2-5. The rulings made in the second, third, fourth, and fifth headnotes require no elaboration.

6. As to the 100 shares of stock standing in the name of Solomon & Company, it is insisted that there was no contractual relation between the bank and plaintiff in error. To this we are not prepared to assent. It is said that section 2248 of the Civil Code, which in part provides that "The stockholder in whose name the capital stock stands upon the books of such corporation at the date of its failure shall be primarily liable to respond upon such individual liability," fixes the liability under the charter of the Exchange Bank upon Solomon. Solomon is liable to the bank. His liability does not depend upon section 2248, supra. That section did not create such liability as to him. One who knowingly allows his name to appear upon the books of a corporation as the owner of capital stock therein, with the right to receive dividends, vote the stock, and to have the advantage of the apparent ownership, is estopped to deny that he is also subject to the burdens, statutory or contractual, imposed upon him as a stockholder in the corporation. He deals with the corporation as a stockholder. He holds himself out to the public as a stockholder. As to the former he is estopped to deny, and as to the latter it would be inequitable to

permit him to deny, the existence of the apparent relationship. This is according to all the authorities. Section 2248, supra, merely prescribes the statutory rule for locating the burden of liability among the successive owners of stock. It is not applicable here. Solomon is liable to the receivers in this case. It by no means follows that the actual owner of the stock is not also liable and primarily liable in the suit. The decided cases seem to support this view. Welles *v.* Larrabee, 36 Fed. 868 (2 L. R. A. 471); Foster *v.* Brown, 120 Mich. 1 (79 N. W. 696, 77 Am. St. R. 565); Hubbell *v.* Houghton, 86 Fed. 547 (affirmed, 91 Fed. 453, 33 C. C. A. 574); Dunn *v.* Howe, 107 Fed. 849 (47 C. C. A. 13); Ohio Valley Bank *v.* Hulitt, 204 U. S. 167, 168 (27 Sup. Ct. 179, 51 L. ed. 427). See also 1 Michie on Banks and Banking, 170.

7. If we are correct in the foregoing, we do not think it can be said that the amendment set up a new cause of action. Relatively to the plaintiff in error he never became a party defendant to the suit, and the suit never became a live action as to him, until the service upon him of the amended petition. It is therefore not a question of adding a new cause of action by amendment. The suit as to him stands just as if in the original action it had been charged that he was the owner of eleven shares of the capital stock which stood in his own name upon the books of the bank, and 100 shares of the capital stock which stood in the name of Solomon & Company, but that Solomon & Company were mere brokers or agents for him and had no interest in said 100 shares. But the amendment to the petition, treating it as such, did not set out a new and different cause of action. The cause of action as to the eleven shares of stock standing in the name of the plaintiff in error, and the 100 shares in fact owned by him (according to the allegations of the amendment) but standing on the books of the bank in the name of Solomon & Company, is the same, ultimately one—the individual liability of the plaintiff in error as a stockholder in the Exchange Bank of Macon under its charter. The judgment of the court below, dismissing the plea in abatement and overruling the demurrer to the petition, is

*Affirmed. All the Justices concur.*