MORRIS FERTILIZER COMPANY *et al. v.* BOYKIN, solicitor-general, relator, *et al.*

1. A filed suit in equity to enjoin and abate B's fertilizer works as a nuisance. C owned a fertilizer factory located near that of B, alleged by A also to constitute a nuisance. C was not a party to the suit, but entered with A and B into a contract in which he agreed to abide by the terms of the interlocutory injunction issued against B. Upon application of A, and by consent of B, the contract, by order of the court, was made a part of the record in the cause between A and B. C did not join in the application, and did not consent to the order. *Held*, that C was not a party to the cause, and was not bound by the judgment of record therein, either (1) by voluntary contract, (2) by the order of the court, or (3) by estoppel; and this is true although A contemplated the filing of a separate suit against C to enjoin his works as a nuisance.

2. A proceeding for attachment for contempt, in which the defendant and a person not a party to the case are joined as respondents, and in which acts of the defendant and that person are alleged to constitute, jointly and severally, a contempt, is demurrable upon the grounds of misjoinder of parties defendant and causes of action.

3. The terms of an injunction should be explicit and definite within themselves; but under the practice in this State, the allegations of the petition are to be considered in connection with the writ itself; and if the acts enjoined be particularly and definitely described in the petition, the injunction is not too vague and indefinite to be enforced. Especially is this true where the injunction was issued by consent of the defendant, and no objection was made to the terms of the order.

No. 1477. JANUARY 14, 1920.

Attachment for contempt. Before Judge Bell. Fulton superior court. May 5, 1919.

On December 5, 1917, the solicitor-general of the Atlanta circuit, in behalf of the State, and upon the relation of a large number of citizens filed in Fulton superior court a petition against Morris Fertilizer Company, seeking to enjoin and abate its fertilizer works in Fulton county as a nuisance. An order was granted

thereon, restraining the defendant "from permitting any poisonous or noxious gases or vapors to escape from, or be carried beyond, the ground owned by the defendant company, and upon which its plant is located," and requiring the defendant to show cause why the order should not be made permanent. On December 6, 1917, Morris Fertilizer Company obtained an order modifying the restraining order, as follows: "The foregoing order is amended by striking the word 'noxious' and inserting in lieu thereof the words 'harmful, injurious or hurtful.'" On January 12, 1918, an application was made in said case to attach, for contempt, Morris Fertilizer Company and certain of its officers, and Armour Fertilizer Works, a corporation, and certain of its officers, because of the refusal of the former to produce, upon notice, certain books and papers, and the refusal of the latter corporation to produce, in response to a subpœna duces tecum, certain of its books and papers. To this application responses were filed by Morris Fertilizer Company and its officers, and Armour Fertilizer Works and its officers. On January 19, 1918, an order was passed in the contempt proceeding, adjudging that "the defendant and respondent, including the individuals named in the rule, be and they are hereby adjudged in contempt of court for refusing to respond to the notice and subpœna duces tecum," and imposing a fine of $300 upon each, with the privilege to purge themselves of the contempts by responding to the notice and to the subpœna duces tecum. As the result of negotiations between the plaintiff and the defendant in the suit for injunction, a consent order was passed in said case on February 11, 1918, further modifying the restraining order of December 5, 1917, as amended on December 6, 1917, as follows: "In the meantime and until said hearing can be had, the defendant is restrained from permitting any gases or vapors to escape from, or be carried beyond, the ground owned by the defendant company, and upon which its plant is located, so as to constitute a nuisance, as defined in sections 4457 and 5329 of the Civil Code of 1910, or either of them." Armour Fertilizer Works was not named as a defendant in the petition to enjoin and abate the works of the Morris Fertilizer Company as a nuisance. Process was neither prayed against it nor served upon it. Nevertheless it appears that Armour Fertilizer Works owned and operated a fertilizer factory in Fulton county,

located near that of Morris Fertilizer Company. On February 12, 1918, an agreement was made and signed as follows:

"The State of Georgia, upon information of John A. Boykin, Solicitor-General, *v.* Morris Fertilizer Company. No. 39114. Fulton Superior Court.

"It is agreed between the plaintiff and the relators in the above-stated case and Morris Fertilizer Company, defendant in said case, and Armour Fertilizer Works, as follows:

"1. The present status of the above-stated cause shall be maintained without either side taking any further steps therein until April 15, 1918, at which time the fertilizer plants in Fulton county of the Morris Fertilizer Company and Armour Fertilizer Works shall be shut down; and thereupon the order heretofore granted upon the contempt proceedings, relating to the production of certain books and papers, with the approval of the court, shall be revoked and such contempt proceedings, as well as the contempt proceedings which have been recently brought, seeking to hold the defendant in contempt for the violation of the restraining order, shall be dismissed.

"2. After said date the Morris Fertilizer Company and Armour Fertilizer Works may, if they see fit, take such steps as in their judgment will permit the operation of both of said plants without being a nuisance. Plaintiff and relators have no concern with what steps, if any, such companies may take to accomplish said ends.

"3. Said plants shall not again be operated unless they can be operated without violating the restraining order of force in the above case; and if both of said plants, at the same time, or either separately, cannot be made to so operate, then such plants shall be immediately shut down and shall remain closed.

"4. The defendant will pay the relator's attorney's fees not to exceed two thousand ($2,000) dollars, and actual expenses and costs of the above-stated litigation to date, not to exceed two hundred and fifty ($250) dollars.

"5. Nothing herein shall be construed as an admission that either of said plants as now operated is a nuisance.

"6. This agreement is not to be binding until duly executed by the defendant and Armour Fertilizer Works through their several duly and properly authorized agents."

The contract was signed by the solicitor-general of the Atlanta circuit, the relator, and by Morris Fertilizer Company and Armour Fertilizer Works. On February 14, 1918, the petitioners filed in said case the following: "Now come the petitioners in the above-stated case and show to the court that the parties to said litigation, plaintiffs and defendant, and the Armour Fertilizer Works, have entered into a written agreement, a copy of which is hereto attached. Petitioners pray that the court order that said agreement shall be filed, made a part of the record of said case and entered on the minutes of the court." A copy of the agreement of February 12, 1918, was attached to the petition; and the court on February 14, 1918, ordered "that said petition and the written agreement attached thereto be filed, made a part of the record in this case and entered on the minutes of this court."

On February 18, 1919, the petitioners made application to attach the Morris Fertilizer Company and Armour Fertilizer Works for contempt, alleging that Armour Fertilizer Works "was operating a plant largely similar to that of the Morris Fertilizer Company and but a short distance therefrom;" "that the plant of the Armour Fertilizer Works was as great a nuisance and was guilty of the same acts and character of the acts as the defendant Morris Fertilizer Company;" that the contract of February 12, 1918, was "a final disposition of the controversy with reference to the plants of both the defendant and the Armour company; that the Armour Company voluntarily became a party to said contract, assisted in preparing and obtaining the order of this honorable court mentioned, and thereby became in fact a party to the record in said cause, and was and is bound by the order made by this honorable court, hereto attached as an exhibit, as fully and as legally as if said Armour Company had been made a party by formal order." It was prayed that the Armour Fertilizer Works be adjudged to be a party defendant in the injunction suit and bound by contract and subject to the order of the court, made on February 11, 1918, as well as any subsequent order or orders that may be made in said cause; that a nisi issue, calling upon the Morris Fertilizer Company and Armour Fertilizer Works to show cause on a day named why each of them should not be attached and punished for contempt; that the order of February 11, 1918, be made permanent, and that each of said defendants be punished as prescribed by law;

and for further relief. The rule nisi issued as prayed. On March 29, 1919, petitioners filed a second application for attachment against Morris Fertilizer Company and Armour Fertilizer Works, alleging a violation by each of the companies of the restraining order of February 11, 1918, and containing like prayers as aforesaid, and upon which a like order to show cause was made. To the petitions of February 18, 1919, and March 29, 1919, the Armour Fertilizer Works demurred upon the following grounds: It appears that the Armour Fertilizer Works is not a party to the original cause, nor subject to any of the orders passed therein; the restraining order of February 11, 1918, is too general and vague in its terms to be the basis of a proceeding for contempt; the record does not authorize a proceeding for contempt jointly against Morris Fertilizer Company and Armour Fertilizer Works; each of the companies has committed a separate and distinct contempt, if at all, and the plaintiffs' cause of action is separate and distinct, if any exists, and the plaintiffs have an adequate and complete remedy at law. Morris Fertilizer Company also demurred on the same grounds, with the exception of the first. Both companies answered, and each denied that the contract of February 12, 1918, was a final disposition of the controversy with reference to the plants of both companies. It was admitted that the Armour Fertilizer Works voluntarily became a party to. the contract, but it was denied that the company procured the making of the contract or assisted in obtaining the order of the court making the contract a part of the record in the injunction suit. The only evidence on the hearing of the contempt proceedings, material to an understanding of error alleged, related to the connection of the Armour Fertilizer Works with the making of the contract of February 12, 1918, and the subsequent order of the court making said contract a part of the record in the main case. It appears that both the plaintiffs and the Morris Fertilizer Company were unwilling to make the contract unless the Armour Fertilizer Works would also join therein, but it does not appear that the Armour Fertilizer Works procured the making of the contract or that it did more than the contract itself discloses. The agreement was accepted and signed by the Armour Fertilizer Works, but it did not petition the court to have the same entered as a part of the record in the case, nor did it consent thereto. The court overruled

the demurrers filed by each of the respondents, found · that the Armour Fertilizer Works was a party defendant in said original case, and adjudged both Morris Fertilizer Company and Armour Fertilizer Works to be in contempt; but discharged the defendants from the rule for contempt, without prejudice to the rights of the plaintiffs to renew the petition for contempt in the event the restraining order of the court theretofore granted should again be violated. To the portion of the order which adjudicated that Armour Fertilizer Works was a party defendant in said case it excepted. To the judgment overruling the demurrers each of the defendants excepted.

*McDaniel & Black* and *Anderson & Rountree,* for plaintiffs in error.

*R. R. Arnold* and *C. T., L. C. & J. L. Hopkins,* contra.

GEORGE, J. · (After stating the foregoing facts.)

1. Armour Fertilizer Works was not named as a defendant in the injunction suit; process was neither prayed against it, directed to it, nor served upon it. No order was prayed, granted, or served upon it, calling upon it to show cause why it should not be made a party defendant, as provided in the Civil Code, § 5601. It did not appear, plead, or waive service and process. It is the positi·• of counsel for the defendants in error, as we understand it, that the Armour Fertilizer Works became a party defendant in the cause (1) by contract, (2) by order of the court making the contract a part of the record in the case, and (3) by estoppel. By permission of the court, one may be made a party plaintiff in an equity case; and in a proper case one may, by order of the court, be permitted to appear and defend the action. Beyond the fact that the contract in this case was entitled in the cause, there is nothing to indicate that it was intended as an intervention or an application to the court to be made a party to the case, and there is in the record no evidence tending to show more than the contract itself discloses. So far as it appears, Armour Fertilizer Works was not before the court on February 14, 1918, the date of the order making the contract a part of the record in the case. It was not called upon to show cause why the contract should not be made a part of the record in the case. It did not petition the court to enter the order of record in the injunction suit. On the question of estoppel, it appears that Armour Fertilizer Works had

a fertilizer factory in Fulton county, located near the factory of Morris Fertilizer Company. It also appears that the relators regarded the factory of Armour Fertilizer Works as a nuisance, and that they contemplated filing a separate petition to abate its factory as a nuisance. The most that can be said is that, as to it, the contract was made in settlement of a contemplated suit. A controversy is not a suit, and an agreement with reference thereto, though intended as a final settlement thereof, is merely a contract, and not a judgment of the court. Even if Armour Fertilizer Works could, by consent, have been made a codefendant in the case, it can not be held to be a party defendant by estoppel, upon the ground that the making of the contract prevented the filing by plaintiffs of a separate suit against it, praying that its factory be enjoined and abated as a nuisance. We therefore hold that the relation of Armour Fertilizer Works to the suit for injunction and to the restraining order of February 11, 1918, was purely contractual. The court was without jurisdiction to attach it for contempt, conceding that it had violated the terms of its agreement, which bound it to abide the order; and the proceedings for contempt, as to it, should have been dismissed.

2, 3. From what we have said it follows that the court also erred in overruling the demurrer of Morris Fertilizer Company. The proceeding was clearly based upon the theory that Morris Fertilizer Company and Armour Fertilizer Works were guilty of a joint contempt; that is, that each company was responsible for the act of the other under the contract of February 12, 1918, and the order of the court making the same a part of the record in the case. Armour Fertilizer Works, not being a party to the suit, was improperly joined in the proceedings for contempt, and the special demurrer of Morris Fertilizer Company on the ground of misjoinder of parties and causes of action should have been sustained. If Morris Fertilizer Company has violated the restraining order of February 11, 1918, it may be adjudged guilty of contempt, and punished for such in a proper proceeding brought against it, provided the restraining order is not too vague and indefinite to be enforceable, as contended by it. Upon this point it is material that Morris Fertilizer Company expressly consented to the terms of the order of February 11, 1918. It must be presumed that Morris Fertilizer Company knew what acts were prohibited by the

order. The failure to object to the terms of the order, to which it consented, precludes the right to object now. In this State a suit at law or in equity is begun by the filing of a petition, clearly and distinctly setting forth the cause of action, and by the service of a copy of the petition and a copy of the process upon the defendant. The original petition set forth a cause of action. On the petition the rule nisi and original restraining order issued. A copy of the petition (specifically setting forth the acts alleged to constitute a nuisance), a copy of the rule nisi and order, and a copy process were served on Morris Fertilizer Company. In other jurisdictions, where the injunction served upon the defendant is the only guide to his conduct, the injunction must be, of necessity, explicit. Under our practice the injunction is not the less explicit because reference is made to the allegations of the petition, which must accompany the writ. That reference may be had to the petition in equity to make the injunction certain, seems to have been decided in Rogers Co. *v.* Rogers, 38 Conn. 121. That was a case to enjoin the respondent from using certain trade-marks. In the course of the opinion it is said: "The petition itself describes the trade-marks with particularity, both those which petitioners claim as belonging to them, and those which the respondents are using in imitation. . . The entire injunction clearly shows that 'said trade-marks' refers to those set out particularly in the petition. There is, we think, no difficulty in understanding what trade-marks are enjoined against." The court properly observes that "it may be well . . to make the injunction full and perfect in itself, without referring to anything else; but references to the petition are very common, and often save repetitions that would be tedious and useless, and are not so objectionable that we can hold the injunction on that account too vague to be enforced." The order in the present case does not restrain the defendants "as prayed," it is true, but the order must be construed in connection with the allegations of the petition. See *Harris* v. *Taylor,* 148 *Ga.* 663 (1), 667 (98 S. E. 86). The order is set forth in full in the statement of facts preceding this opinion. In terms it restrains the defendant "from permitting any gases or vapors to escape from, or be carried beyond, the ground owned by the defendant company and upon which its plant is located, so as to constitute a nuisance, as defined in sections 4457 and 5329 of the Civil Code of

Georgia of 1910, or either of them." The order is specific with reference to the act. One must know when his act becomes a nuisance. In the English case of Crump v. Lambert, 3 L. R. Eq. 409, 414, Lord Romilly, M. R., deals with the precise question in a practical manner: "I shall make such an order as the Vice-Chancellor made in Walter v. Selfe [4 DeG. & Sm. 315], that is, an injunction to restrain the defendants, their servants, workmen, and agents from allowing smoke and effluvia to issue from their said factory so as to occasion nuisance, disturbance, and annoyance to the plaintiff, as owner or occupier of the tenement in the bill mentioned; and a similar injunction to restrain the defendants, their servants, workmen, and agents from making, or causing to be made, noises in the factory, so as to occasion nuisance, disturbance, and annoyance to the plaintiff, as the owner or occupier of the said messuage in the bill mentioned. I can not make the order more precise; it is always a question of degree; and if the defendants can continue to carry on their works in such manner as to avoid any substantial issue of smoke or noise, they will not violate the injunction. Whether they do so or not may have to be tried in another proceeding."

*Judgment reversed. All the Justices concur.*