GREENWOOD *et al. v.* COCHRANE *et al.*

No. 9808.  OCTOBER 11, 1933.

*T. B. Higdon* and *George L. Bell Jr.,* for plaintiffs in error.

*Anderson, Crenshaw & Hansell, Warren Cox, J. B. Jones, G. N. Bynum,* and *D. K. Johnston,* contra.

GILBERT, J.  G. W. Greenwood, deceased, during his lifetime, purchased five shares of stock in a Delray, Florida, bank, accepted a transfer written on the back of the stock certificate in the customary place, and took physical possession of the certificate. No transfer of the stock was made on the books of the bank. After purchase and acceptance of the stock the bank failed, and the liquidating agent of the bank sought to collect from the decedent's administrator a 100 per cent. stock assessment which was levied against all stockholders. The seller of the stock and the administrator of the purchaser are both parties to this equitable proceeding. The trial court found in favor of the liquidating agent, and gave judgment for the amount sued for against the administrator of the purchaser's estate. The defendants excepted. The sole question involved is whether the transfer to the deceased, G. W. Greenwood, under the circumstances stated, without transfer on the books of the bank, authorized the collection of the assessment by the liquidating agent in behalf of the creditors of the bank against the transferee. No question of fraud or of intent to evade the liability, or denial of the legality and genuineness of the transfer, to the extent described above, is involved.

The Florida statute creating the liability, which was pleaded, is as follows: "Stockholders in every banking, savings, and trust company shall be held individually responsible to the extent of the amount of their stock therein at the par value thereof, in addition to the amount invested in such shares." It is agreed that the law of Florida with respect to the liability of shareholders in banks organized under the laws of that state is substantially the same as that of the liability of shareholders of national banks under the government of the United States. See Chavous *v.* Gornto, 89

Fla. 12 (102 So. 754). Two general rules applicable to national banks are established by the Supreme Court, and followed, we believe, by substantially all courts, viz.: "1. When the purchaser of stock of a national bank receives from the seller the certificates properly endorsed, title passes and the transfer is complete as between the parties; and, as between them, the purchaser alone becomes liable for assessments thereafter imposed on the shares. 2. The actual owner of stock of a national bank may be held for an assessment thereon, although his name does not appear upon the transfer books of the bank." Early v. Richardson, 280 U. S. 496 (50 Sup. Ct. 176). They apply to state banks created under the law of Florida, and the laws of that State admittedly control this case. A similar question arose in *Harris* v. *Taylor,* 148 *Ga.* 663 (98 S. E. 86). In that case the court was not dealing with a national bank, but was dealing with a bank chartered under the laws of Georgia, and the decision was based on the Georgia statute with respect to the liability of shareholders of State banks. It was ruled: "In such action the receiver may sue the stockholder in whose name the capital stock stands upon the books of the corporation at the time of its failure (Civil Code, § 2248) ; or he may sue the real owner of the shares of the capital stock in such failed corporation, although such shares stand on the books of the bank in the name of another who in fact has no interest therein." In the opinion the Georgia statute was quoted, as follows: "The stockholder in whose name the capital stock stands upon the books of such corporation at the date of its failure shall be primarily liable to respond upon such individual liability." Accordingly it was so held and applied in the case; but it was also held: "It by no means follows that the actual owner is not liable, and primarily liable in the suit." See, in the same connection, *Doster* v. *Mobley,* 38 *Ga. App.* 508 (144 S. E. 385) ; *Pignatel* v. *Mobley,* 44 *Ga. App.* 556 (162 S. E. 159). So it appears that under the Georgia statute the rule does not differ from that applicable to national banks. It follows that the rulings of this court are persuasive authority, although the Florida law controls.

As to the general rule of liability of transferees of bank stock where the transfer has not been made on the books of the bank, see Wright v. Keene, 82 Mont. 603 (208 Pac. 545, 60 A. L. R. 109, notes) ; Richmond v. Irons, 121 U. S. 27, 30 (7 Sup. Ct. 788,

30 L. ed. 864); Davis *v.* Stevens, 17 Blatchford, 259. The question, as applied to national banks, was considered in Wright *v.* Keene, supra. A very able and concisely stated opinion, written by Chief Justice Callaway, affords helpful light. We quote from it the following: " 'The authority to prescribe the manner of the transfer permits only conditions which are essential to the protection of the association against transfers which are fraudulent or which may be designed to evade the just responsibility of the stockholder. It was enacted for the benefit of the corporation, its stockholders, and its creditors only. As to all other parties a transfer of such stock which is good at common law is good under the statute. As between the parties the title to the stock is acquired by the seller's delivery of his certificate thereof to the purchaser, indorsed or assigned in the usual manner, and either party may compel the registration and transfer of the stock on the books of the bank.' (7 C. J. 766, and see 3 R. C. L. 388.) " The court then ruled that "As a general rule the individual liability of a shareholder continues until there is a transfer of the stock on the books of the bank. To this rule there are exceptions," which the court held need not be stated in that case. The court quoted from Pauly *v.* State Loan & Trust Co., 165 U. S. 606 (17 Sup. Ct. 465, 41 L. ed. 844), "certain rules relating to the liability of stockholders of national banking associations. . . 'That the real owner of the shares of the capital stock of a national banking association may, in every case, be treated as a shareholder within the meaning of section 5151' " of the United States statutes. The court also held, citing Houghton *v.* Hubbell, 91 Fed. 453 (33 C. C. A. 574), in effect, "that although the stock without explanation stood upon the books of the corporation in the name of one who was in fact not the owner, the real owner was liable, the creditors having elected to proceed against him," citing Davis *v.* Stevens, supra, opinion by Chief Justice Waite. The court cited, for the rule stated, also Ohio Valley National Bank *v.* Hulitt, 204 U. S. 162 (27 Sup. Ct. 179, 51 L. ed. 423). The court held the real owner liable, although the stock had never been transferred to him on the books of the bank, and in fact the bank had refused to make such transfer, apparently because the transferor had died.

It is argued that until stock is transferred upon the books of the bank the transferee can derive no benefit from the stock by way of

dividends, or by participating in meetings of the shareholders, and in fact will not be recognized by the bank as one of its shareholders. In one sense this is true, but it is not an accurate statement. After a transfer of ownership has been entered on the back of a certificate and the certificate is delivered to the transferee, either party may, as a matter of law, force the bank to enter the transfer on its books. Neither party, then, can complain of any injury or liability that may result to them because the stock has not been transferred on the books of the bank. In Davis v. Stevens, supra, Stevens bought stock of a national bank from registered owners, and took assignments of their certificates, with authority to complete the transfers on the books. As between Stevens and his vendors this made Stevens the owner. Stevens had the stock transferred on the books of the bank to Elston, a third person. Elston had no real interest in the stock. The court held: "As between Stevens and Elston, however, Stevens was the real owner, and Elston his authorized representative in the bank. As such representative, Elston could vote the stock at elections and receive and receipt for dividends. So, too, he could sell and transfer the stock on the books, and such sale and transfer to a bona fide purchaser would pass the title, free from any claim of Stevens. Neither would the bank, under ordinary circumstances, be liable to Stevens for permitting the transfer to be made. So far as Elston was concerned, the transfer to him was colorable only; and it is apparent that the only object Stevens had in causing it to be made was to conceal his ownership, and thus, if possible, escape all statutory liability. Such being the case, I am unable to see how he can occupy any different position from what he would if the stock had been taken directly from his own name on the books and put in that of Elston. He is still the real owner, with Elston as his agent specially authorized to hold for him the legal title. The debt of the agent is the debt of the principal, and always recoverable from the principal. By the rules of law which govern the relation of principal and agent, the registry on the books in the name of Elston was, as between Stevens and Elston, in legal effect, the same as a registry in the name of Stevens. The obligations which Elston assumed by reason of such registry were the obligations of Stevens." In the present case the purpose of G. W. Greenwood in failing or refusing to cause the stock to be trans-

ferred on the books of the bank is not shown. It is not necessary that it should be shown. It is not necessary that any ulterior motive be shown. It only needed to be shown that he was the real owner.

As between the parties, as we have seen, transfer on the back of the certificate is complete. Where one holds certificates of stock in a bank transferred in blank, or to the holder of such certificate, and fails or refuses to have the same entered on the books of the bank, the law will assume that he is exercising his rights as a shareholder through the person in whose name the stock stands on the books of the bank. In a sense the latter is the agent of the former in such circumstances. The burden is not placed upon the liquidating agent of an insolvent bank to determine who is the true owner of its stock. He may proceed against either the person in whose name the stock stands on the books of the bank or against some other person deemed by him to be the true owner. The true owner or the prima facie owner may cause the other to be made a party to the case, and therein the rights of all may be determined and the liability be found against the true owner. If the assessment is collected from the person in whose name the stock stands on the books of the bank, and he is not the true owner, he may in turn recover of the true owner the amount that has been collected from him. In this case both the transferor and the estate of the transferee were parties to the suit. The court found that the estate of G. W. Greenwood was the true owner of the stock. Under the authorities cited above, that finding was without error.

*Judgment affirmed. All the Justices concur.*