25285. BROCK *v.* GORMLEY, superintendent, etc.

Decided July 14, 1936.

790

*Davis & Stephens,* for plaintiff in error.

*M. J. Yeomans, attorney-general, Dave M. Parker* and *George L. Goode, assistant attorneys-general,* contra.

JENKINS, P. J. ▇ The banking act of 1919 (Code, § 13-1903), provides that: "Whenever a stockholder in any bank is individually liable under the charter, and shall transfer his stock, and have such transfer entered upon the books of the bank or give to the bank written notice thereof, he shall be exempt from such liability by such transfer, unless such bank shall fail within six months from the date of the entry of such transfer or from the delivery of such notice to the bank." Thus an assigning stockholder may relieve himself from liability only by (1) having the stock transfer entered on the books of the bank, or (2) giving to the bank written notice of the transfer. In the instant case the stockholder merely executed and delivered in September, 1929, an assignment of his certificate of stock and a power of attorney to transfer it on the books of the bank, *both in blank,* to an individual purchaser, who, although he was cashier, first vice-president, and a director of the bank, was neither instructed by the stockholder to make a transfer of the stock on the books, nor was shown to have had any authority from the bank to do so. The only additional evidence which might possibly have indicated that the stockholder caused the transfer to be "entered upon the books of the bank" was that of the stock-books themselves. These showed that before the failure of the bank on March 28, 1931, a new certificate for the two shares sold and assigned in blank and sixteen additional shares was issued by the bank to the purchaser on January 17, 1931. An entry on the books read: "Certificate No. 79—2 shares—cancelled 1-17-1931; Certificate No. 418 issued in its place 1-17-1931—16 balance sub. original—2—Ernest Brock [the stockholder]—18." In the absence of any positive evidence as to the date when the two shares in question were actually transferred on the books, this entry at least prima facie indicated that the transfer occurred on the date when the new certificate was issued to the purchaser, January 17, 1931, and not prior thereto. The testimony that after the stockholder made the sale in September, 1929, there had been "two stockholders' meetings of the bank, . . held

January 14, 1930, and January 13, 1931," no written notice of which was received by the assigning stockholder, although the by-laws required "written or printed notice" of all "special meetings of the stockholders" to be given to them, was without probative value to indicate that the time of the transfer on the books of the bank antedated the six months before the failure required by the statute, upon the theory that this testimony tended to show that the bank officials, having knowledge of the transfer on the books, no longer recognized the assignor as a stockholder, because they failed to send him notices of the meetings. The evidence was insufficient to warrant such an inference, since it failed to show that the meetings were "special meetings," notice of which was required by the by-laws, rather than regular annual meetings, notice of which was not required.

It has been held that where a stockholder sells his stock to a person who is cashier of the bank and in charge of its stock-books and has the duty of making all stock transfers on its books, and delivers to such a person a duly-executed assignment of the stock with power of attorney to assign on the books, and also expressly directs the purchaser *"as cashier"* to transfer at once the stock on the books, and the officer promises to do so, this is a sufficient "written notice" to the bank "of the transfer;" and that the assigning stockholder is not subject to assessment where the cashier neglected to make the transfer on the books, and the stockholder at the time of the sale had no knowledge of the insolvent or failing condition of the bank, and did not know or suspect until after the failure that the record had not been made on the books. *Jackson* v. *Freeman,* 20 *Ga. App.* 767 (93 S. E. 284). However, in the instant case, the absence of instructions by the assignor, or of a promise by the assignee, receiving the certificate under the assignment in blank, to make the assignment, or of any showing of authority from the bank to the assignee to do so, differentiates the case from that decision. The mere delivery of the assignment in blank to the officer of the bank, who purchased the stock in his individual capacity, would not be "written notice to the bank" of the transfer, as required by the statute. See *Candler* v. *Mobley,* 37 *Ga. App.* 259 (139 S. E. 732); *Longino* v. *Bennett,* 39 *Ga. App.* 89, 92 (146 S. E. 324); *Pignatel* v. *Mobley,* 44 *Ga. App.* 556 (162 S. E. 159); *Bank of Toccoa* v. *Bond,* 44 *Ga. App.* 450

(161 S. E. 636); *Latimer* v. *Bennett*, 37 *Ga. App.* 246 (4) (139 S. E. 571).

■ Under the Code, § 13-1904, "the stockholder in whose name the capital stock stands upon the books of such bank at the date of its failure, shall be primarily liable to respond upon such individual liability; but upon proof made that any stockholder at the date of the failure is insolvent, recourse may be had against the person from whom such insolvent stockholder received his stock, if within a period of six months prior to the date of the failure of such bank." The stock involved in this case standing on the books of the bank in the name of the assignee purchaser from January 17, 1931, to the time of failure, March 28, 1931, the purchaser rather than the original stockholder was "primarily liable" to assessment, in the absence of "proof made" that the purchaser was insolvent "at the date of the failure" of the bank. This Code section is almost identical with § 22-903, relating to stockholders in general corporations, which contemplates that proof of insolvency of the assignee stockholder, primarily liable, must be made by evidence at a trial of the litigation before the assignor can be held liable. But in assignments of bank stock, as in the instant case, "the assessment made against a stockholder in a bank which has been taken over by the superintendent of banks for liquidation, in pursuance of the stockholders' liability law relative to defunct banks, takes the place of a judgment and bears the relation of a judgment to the execution issuing on such assessment by the superintendent of banks in accordance with the banking laws of this State." *Neely* v. *Mobley,* 49 *Ga. App.* 541 (2) (176 S. E. 527). The superintendent of banks being expressly empowered by the Code, § 13-822, to make assessments and issue executions therefor against stockholders of defunct banks, the presumption is that he "did his duty as required by law, where the execution recites that it was issued and that the assessment on which it was based was made under the authority of the law." *Carmichael* v. *Mobley,* 50 *Ga. App.* 574 (4) (178 S. E. 418), and cit. Even though an assessed stockholder, upon levy of an execution, is entitled under the statute to contest by affidavit of illegality "his liability for such assessment and the amount and necessity thereof," the burden rests upon him to support such an attack by evidence, where his attack is not sustained by the assessment or execution itself. Ac-

cordingly, in this case, irrespective of whether or not the evidence was insufficient to show that the assignee stockholder, who was primarily liable, was insolvent at the time of the failure, as a condition precedent to liability of the assignor stockholder, the evidence was wholly insufficient to show or indicate that such assignee was solvent. In the absence of evidence of solvency, the assignor failed to carry the burden of proving the invalidity of the assessment against him and the execution thereunder, and to sustain these grounds of his affidavit of illegality.

■ The provisions of the Code, § 13-822, do not make it incumbent upon the superintendent of banks, after the ninety days provided for examination of the affairs of a defunct bank and the making against stockholders of a first assessment sufficient to pay the depositors in full, then to elect, under § 13-1904, whether he shall make an assessment against the stockholder in whose name capital stock stands on the bank books as the person primarily liable, or against the stockholder who assigned the stock within six months before the failure, "upon proof" to the superintendent that the assignee was insolvent on the date of the failure. By section 13-822 it is in terms provided: "If at any time prior to the final payment of all the indebtedness of such bank it shall appear to the superintendent that the assessment made by him is insufficient in amount to pay such depositors in full, said superintendent may from time to time make other assessments not in excess of the liability of the stockholders upon their stock, which shall be enforced and collected in like manner." Section 13-1904 imposing no limitation as to the time when "proof" of insolvency of the assignee stockholder must be made to the superintendent, or when "recourse" against the assignor must be had, the express power under the former section, if not also the implied powers under the act, give to the superintendent the right to issue an assessment and execution first against the assignee, and afterwards, if his insolvency is then proved and determined, to make an assessment and issue an execution against the assignor. See also *Chatham Bank* v. *Brobston,* 99 *Ga.* 801 (6) (27 S. E. 790); *Greenwood* v. *Cochrane,* 177 *Ga.* 753, 757 (171 S. E. 282), as to the rights of creditors and a liquidating agent under former or similar laws. Accordingly, the instant assignor can not invoke the principles of election, estoppel, or implied or legal fraud, with-

out showing some actual fraud, against the superintendent, upon averments merely that the superintendent first issued an assessment and execution against the administrator of the assignee stockholder, negligently failed to file a caveat to the setting aside of all the property of the estate as a year's support to the widow, so as to collect the execution from the estate, and failed to make an assessment against the assignor or to give him any notice thereof until after the setting aside of the year's support, so that he might himself have had an opportunity to file a caveat before the ordinary. The liabilities and procedure in cases of this nature, under the banking statutes, are not analogous to those controlling principals and sureties. Therefore the judge did not err in disallowing the amendment to the affidavit of illegality, seeking to set up the grounds just indicated.

■ Under the preceding rulings, the court did not err in directing the verdict in favor of the superintendent of banks on the original affidavit of illegality and the evidence thereunder, and in refusing a new trial.

*Judgment affirmed. Sutton, J., concurs. Stephens, J., concurs specially.*

STEPHENS, J. I concur in all except what is said in paragraph 2 of the syllabus and the opinion. I do not concur in the proposition that the assessment against the stockholder of the defunct bank, made by the superintendent of banks as provided by the banking act, takes the place of an ordinary judgment as respects the so-called affidavit of illegality filed pursuant to the act by which the stockholder is permitted to defend against the assessment. The filing of the affidavit of illegality has the effect of converting the proceedings into an ordinary common-law suit, wherein the assessment and the execution are analogous to the petition, and the affidavit of illegality is analogous to the defendant's plea. The burden of proof is upon the plaintiff bank. See citations in *City of LaGrange* v. *Frosolona, 52 Ga. App.* 232, 237 (183 S. E. 99). The affidavit of illegality in this case, in which the defendant denies that he was a stockholder in the bank, contains no defense to the assessment on the ground that the person to whom the defendant had sold the stock, and in whose name the stock appeared on the books of the bank at the time of the failure of the

bank, was solvent. There being no such issue, it is unnecessary to pass on the matters referred to in paragraph 2. I therefore concur in the judgment of affirmance.